Good morning. Be seated please. We welcome you here today. I hope you all have overcoats for this unusual New Orleans weather. We have three cases on the docket this morning. Just a couple of words to those who haven't been here before. We have time signals on the bench. Yellow light means you have two minutes left. When the red light comes on, we ask you to conclude your remarks as promptly as possible unless you're answering a question from the court. Further, we have not normally read the whole record before we come into court, but we are familiar with the briefs and excerpts, but if you want to give us record citations during your remarks, that's very helpful. We therefore call the first case of the morning number 22-20588 U.S. v. Roland. We'll hear from Mr. Hester. Good morning, your honors. May it please the court. Mr. Roland did not receive a fair trial, and he didn't for four reasons. I'd like to discuss three of those today. First off, the government was allowed to present essentially guilt by association evidence regarding the conviction of his co-conspirator, Mr. Jacobs, in a case out of the Eastern District of Texas, based on essentially the same type of conduct on a case that Mr. Roland was at one time a co-defendant in that case, and that evidence was presented to the jury, and it came in through different witnesses. Secondly, the government was allowed to misuse Mr. Roland's state court conviction in California for essentially the same conduct. They even called the main investigator in the California case who testified about the similarities between the evidence. Essentially, it was the same evidence presented in California as was presented in the Southern District of Texas, including the same false notary stamps, the same documents, and at the end of his testimony, at page 2709 of the record, you'll see that he actually testified at the end of that case. He boxed up the evidence and he sent it to the FBI. Excuse me, I gave you the wrong page number. It's 9705 of the record. He actually boxed up that evidence, sent it to the FBI, and then they used it to prosecute Mr. Roland in this case. Thirdly, the court restricted Mr. Roland's good faith defense, which was really his only defense in this case. I'd like to dive a little bit deeper into the guilt by association evidence that was presented by the government regarding the co-conspirator, Mr. Jacobs, and the government claims that they presented this evidence through their first witness, an FBI agent, again through Mr. Jacobs, and again through their last witness, the second case agent, and then talked about it in closing argument and said Mr. Jacobs was Mr. Roland's partner, he was convicted for crimes just like these, and the government says they presented all that evidence under Rule 609, which allows Mr. Roland to impeach Mr. Jacobs with a prior conviction, and that was an argument Mr. Roland never made in this case. In fact, in closing arguments, Mr. Roland said flat out, I don't think the government offered Mr. Jacobs anything for his testimony. Despite that, the government presents all this evidence in this really improper closing argument. My understanding is that only two of these instances were objected to. Is that right? Your Honor, I think there was a a lemonade ruling that the government couldn't get into Mr. Roland's criminal history. Yeah, but you still have to object when the evidence is offered. Right, and he didn't do that. He represented himself. But, so I think, so that goes to Mr. Roland's criminal history, which is issue two, and because he didn't open the door or present evidence regarding Mr. Jacobs' criminal history, that just came in. So he didn't object to Mr. Jacobs' criminal history. That means this court plain error review, okay? So, Your Honor, I cite to you in my reply brief the Miranda case that involved evidence like this, came in, co-conspirator's conviction. Co-conspirator testified in the case. The defendant didn't object to it. There was a strong jury instruction from the court saying you can't consider that as evidence of guilt. Nonetheless, the court still reversed on plain error review. So Miranda's really our best case on issue one that checks all the boxes of what happened in this case. And Miranda alone says this court should vacate the conviction and send it back to the district court on issue one. Also, if I can return to issue one, on the 609 issue, because the government says, look, we were blunting the sword with anticipated cross-examination regarding this conviction from Mr. Roland. And one of the problems with that is that their closing argument has no relation to credibility or blunting the sword. It says Mr. Jacobs, that's the co-conspirator, was convicted of crimes just like these. They were partners. And he's the most important name in this case. He was convicted of crimes just like these. He was partners with Jacobs. That's pure guilt by association argument. That's very similar to what this court said. Saying that he's a partner is guilt by association? Partner and convicted of crimes just like these. Yes. So that's using his conviction, that he was convicted of crimes just like these, to say Mr. Roland is also guilty by association with Mr. Jacobs. It's improper use of the conviction that has nothing to do with credibility. Also, the government went far beyond what's permitted in blunting the sword. There's plenty of case law from this court. The Tumblin case, which is cited in my reply brief. The Cox case, also cited in my reply brief. Essentially, when 609 evidence comes in, you get to present the fact of conviction in the sentence. Here, the government went far beyond that. And they got into how Mr. Jacobs used the same notary stamps that Mr. Roland was accused of using. Used the same process, same types of documents that Mr. Roland was accused of doing. And developed this process with Mr. Roland. That went far beyond what's permitted under Rule 609. Finally, this was improper because it was presented through witnesses other than Mr. Jacobs himself. There's case law from this court that says the government can blunt the sword with anticipated cross by getting the conviction out there in front of the jury. But they don't get to do that through other witnesses. The only witness that can be crossed about the conviction is the person with the conviction himself. Here, that was Mr. Jacobs. There's no basis to start talking about Mr. Jacobs' conviction with the case agent, the very first witness who testified, and the last witness who testified, who was the second case agent. So, for all of those reasons, Issue 1 alone is sufficient to vacate these convictions. Well, for any of these, I mean, once you're given the overwhelming evidence against Mr. Roland, how can you say those prejudice the jury? Well, Your Honor, we . . . I mean, because it was obvious that he had faked all these documents. In this case, all that was introduced over two weeks of trial, right? He faked the documents. He managed to defraud not only the homeowner, but the homeowner's borrower. It's unbelievable. Very remarkable. Well, Your Honor, I would say all of that evidence, it goes to Mr. Roland's conduct, which wasn't disputed in this case. What this case was all about was about intent. It was about the mens rea piece of wire fraud. Why don't you try to explain how you can have good faith when you've already pled guilty to precisely the same conduct in another case? Well, Your Honor . . . And that wasn't a preserved error in any case. Okay. So Mr. Roland was convicted by a jury in California of doing the same type of conduct. And so the argument is that he had good faith during that as well. It went to the jury. He didn't plead guilty and accept guilt. And the jury disagreed with him. But it's highly improper, and this goes to issue two, so I'm glad we're talking about it. It goes to issue two because it's highly improper for the government to say that this jury in California convicted Mr. Roland of doing the same thing, so you should too. This other jury's already done the job for you. And that's exactly what they did. They presented Victor Klotz. He's the detective in the California case. He talked about seizing evidence in the California case, the same evidence that was used here in the federal case against Mr. Roland, the notary stamps, the documents. He even said that, and this is on page 9711 of the record, that Mr. Roland had access to all of those documents in the state case. The jury convicted him anyway. That was under the government's redirect. On direct testimony, he said that all of these documents and evidence were presented to the jury, and they convicted Mr. Roland of this conduct. And then afterwards, you can see this at page 9705 of the record. At the conclusion of that case, he boxed up the evidence and sent it to the FBI, and the prosecutor even had him identify the box that he sent to the FBI there in the courtroom, and so it was clear. He was not being convicted in Texas for what he did in California, though. He just moved to Texas and did the same crimes, right? I disagree. The Texas case was based on conduct in California. Yes, California properties, and you can even see on, I think it's on page 310, it starts there. The California case, the appellate decision is in the record because the government submitted it in their response to Mr. Roland's motion to dismiss the case, and you'll see that the properties involved in this case were also involved in California, and that's apparent from Mr. Collins' testimony, who said, look, I recovered all this evidence. We convicted him with it in California. Then at the end of it, we boxed it up and sent it to the FBI, and then they used it to convict him again. If I could take you back to the first issue, where in the record did your client make an unequivocal commitment not to try to impeach the credibility of Mr. Jacobs, if at all? I think he made that commitment when he cross-examined Mr. Jacobs and never raised it a single time. Isn't that too late? The government has to choose during direct whether it's going blunt the force of cross-examination. If the commitment comes during cross-examination, that's no commitment at all. What am I missing? Judge, I think you're missing that they then brought it up through the last witness of the trial after it's obvious Mr. Roland's not relying on that to impeach his credibility. Understood. Maybe your argument is shifting, or maybe I just don't fully understand it. You don't dispute that the government could get into the conviction of Mr. Jacobs on direct. No dispute there. Is that right? Well, they can bring up the fact of conviction in the sentence, and that's it, but they went way beyond that. They went into the evidence of the conviction. They talked about it being based on the same notary stamps, the same process that he developed with Mr. Roland. So that's why that was improper. To follow up on Judge Jones's question about whether you can satisfy your burden to show that this substantially prejudiced your client's rights, am I right in remembering that two FBI agents testified at trial that your client admitted to filing fraudulent documents? So he admitted to filing the documents. Again, his conduct's not in dispute at all. This case is all about his intent. Did he admit those documents were fraudulent? He didn't say fraudulent. I think a fair reading of the record shows that I think fraudulent is the government's word, that is the case agent's word, and even if he did, Mr. Jacobs also said they were fraudulent, but if you read his testimony, it's kind of fraudulent after the fact, not at the time. He even says at one point, this was done with intent to do something good. So this is all hindsight to me now, when he's talking about the documents being fraudulent. Well, how come the only person who got good out of it was himself? I apologize, Your Honor. He said his intent was to do something good. Yes. And he's the one who pocketed the money and everyone else lost, as I understand it. Mr. Roland took a fee from the homeowners, but gave a lot of the money from the sale of the house. At the end of it, and I see my time's expired. Thank you, Your Honor. All right, sir. Thank you. You have a chance for rebuttal. Thank you. Mr. Smith. Good morning. May it please the Court, Jason Smith for the United States. I want to turn first to a question that Judge Hendricks asked about when, if ever, Mr. Roland unequivocally committed to not impeaching Mr. Jacobs' testimony or his credibility, and that never happened. In fact, in closing argument, Mr. Roland specifically argued that Mr. Jacobs had lied when he testified about a key conversation that Mr. Roland and Mr. Jacobs had had where they had essentially hatched this plot, where they had come to the understanding that the only way to make their foreclosure rescue scheme successful was to file fraudulent documents clouding title. That falls at page, in my glasses, I apologize to the Court, 2884 of the record, Mr. Roland's arguing, and so I believe that the government did not offer him anything for his testimony. Then Mr. Roland continues, but I believe what's true is that any testimony that leads to a conviction has to be considered, and there he seems to be making reference to Mr. Jacobs' sentence and his obligation under his plea agreement to continue cooperating with the government, and then Mr. Roland goes on, and that's what we heard when Mr. Jacobs came up and lied about us sitting down and having a conversation about doing something fraudulent. So the idea that Mr. Roland had not challenged Mr. Jacobs' credibility just isn't true. He out and out accused Mr. Jacobs of lying. The government properly introduced evidence of Mr. Jacobs' guilty plea in the Eastern District, and I think one of the things that Mr. Hester and I might disagree about is he is referring to much of Mr. Jacobs' testimony as improper details about Mr. Jacobs' own conduct as guilt by association testimony, and that testimony wasn't guilt by association testimony, it was guilt by conspiracy testimony. He talked about how he and Mr. Roland initially came up with this scheme, the decisions that they made, and how they decided to go through their process. He was testifying in large part about conduct that he and Mr. Roland had engaged in together as co-conspirators, in part in fraudulently conveying the title to Mr. Jacobs' own house. That wasn't guilt by association testimony, that was straight co-conspirator testimony of the kind that's seen every day when there's a cooperating witness. With respect to the evidence of Mr. Roland's own convictions, Mr. Hester argued it was completely improper for the government to say another jury convicted him for this conduct, and you should too. The government never argued that. The government explicitly in closing said that it wasn't arguing that, and you can see that at page 2908 of the record where the prosecutor says, in referring to the California conviction, quote, that's not brought to you because he was convicted there that you find him guilty here. That was not the reason, but it does provide a bearing on his credibility in this case. So consistent with the instructions that the district court had given, the government explicitly said what the purpose of that testimony was, what the inference was that the jury should draw, and the inference was that because he's a convicted felon in the California case, Mr. Roland's testimony was less credible here because he has a felony conviction. And then the government went on to discuss the inferences that the jury should draw from the Washington conviction, which I think is the one that you were referring to, Judge Jones, where Mr. Roland had engaged in very similar conduct of preparing false tax returns in connection with loan documents. And there the AUSA said he was convicted of making a false statement to a financial institution, and I brought out with him on cross-examination that what did he do? He prepared false tax returns that were submitted with a loan application. Then the AUSA goes on to argue, now that's not submitted to you because he was convicted of that, that you should find him guilty here, but it's evidence that you can use to see that in this case there's not an accident or a mistake. He had previously been convicted of creating false documents, which is what he did in this case. I mean this all goes to motive and plan and what intent, right? It does, Your Honor. Motive, plan, intent, modus operandi, absence of mistake, all of those things are appropriate considerations for that Washington conviction for very similar conduct. I just want to back up very briefly to Mr. Jacobs' testimony. Mr. Hester referred to this Court's decision in U.S. v. Miranda, where this Court reversed on plain error for admission of evidence of a co-conspirator's conviction. Mr. Hester said that that case checks all the same boxes here. It does not. In Miranda, the issue was that the prosecutor put on evidence of the testifying co-conspirator's prior conviction by another jury with less evidence than was before the current jury and then argued to that jury, while there was less evidence for the jury who convicted the co-conspirator, there's more evidence here now, you should convict this defendant. But there is no box in this case similar to that. There's nothing similar. How about the good faith defense? Your Honor, this Court here, the very experienced District Court, was dealing with a pro se defendant. It gave him ample leeway to make his good faith defense. He testified for about 100 pages of transcript. He displayed the statute that he said was the core of his good faith belief that he could file these fraudulent documents, could use these fraudulent notary stamps to change title to properties. Notably in that testimony, there is very little explaining that leap. Essentially, the bulk of his testimony is a homeowner can rescind their mortgage and once they do, everything else is legal. The District Court properly limited extraneous material that the defendant sought to put in, unrelated Supreme Court decisions, unrelated statutes. The District Court worked to protect the defendant from himself in excluding a bunch of the evidence that he offered. If you look at the evidence that he sought to introduce, he sought to introduce some documents from his California case, including his sentencing submission, a bunch of things that the Court at page 2578 of the record found would have actually been prejudicial to Mr. Rowland. The Court here was dealing with a pro se litigant. It gave him plenty of room to make his argument without unduly confusing or prejudicing the jury. I would be happy to answer any other questions the Court might have, but if you don't have any. Assuming we agree with you that the government properly could bring out the prior conviction of Mr. Jacobs during the direct to blunt any potential cross-examination, why did the government need to also bring it up in both the case agent's testimony and at closing argument? I think I would just refine a little bit the point of blunting cross-examination. That is certainly one of the reasons that this Court has talked about the government bringing out preemptively a testifying witness's prior conviction, but this Court's also stated it a little bit more broadly than that in terms of just to give the jury information to assess the credibility of the cooperator. It's never set a precondition that it has to be to blunt an argument from the defense. So I just with that gloss I'm happy to respond to the rest of your questions. Fair enough. Assuming we agree with you that you were permitted to bring in the prior conviction so the jury could sufficiently weigh the credibility of Mr. Jacobs, how or why did you need to bring it out in both the case agent's testimony and in closing argument? Certainly the jury has the right and the need to assess the credibility of witnesses. Your closing argument opposing counsel says that's not what you were doing in closing. The argument was Jacobs, the man who's pled guilty to crimes just like these that he committed on his own, they were partners. How is that about the credibility of Mr. Jacobs? I think it's mostly in terms of identifying who Mr. Jacobs is. It is absolutely not guilt by associate because he pled guilty. You should find this defendant guilty too. The situation here is that those men were partners, that Jacobs and Rollins came up with this scheme together. They worked on this scheme together for much of the conduct Mr. Rollin was prosecuted for here and Jacobs took that scheme and ran with it. I think the reason why that came out in the testimony of the case agents, well reasons the investigation came out was just to describe the conduct that was discovered and the fraud that was going on. The references which I think wind up being a single sentence or a single question here or there about whether Mr. Jacobs was convicted in the testimony of the case agents, I think that's just part of the narrative of telling what happened here. It was not offered for any purpose as the court repeatedly instructed the jury for the jury here to infer Mr. Rollin's guilt solely from the fact of conviction of Mr. Jacobs. Absolutely the government was asking the jury to find Mr. Rollin guilty in large part based on the testimony of Mr. Jacobs but that's about the facts that he testified to about the scheme that they cooked up together. I understand. The court's exclusion of the defendant's attempt to admit character evidence. You've just argued even if that were error it's harmless. Do you agree that the district court should have admitted that evidence? So I believe we're talking about a single question to Mr. Rollin's ex-wife about his reputation for honesty. As I was preparing for this argument going back and the proper foundation was laid or that question was asked in a way that it would be clear that the court erred in sustaining an objection to it. That said for the purposes of our brief and for this argument we assume that it was erroneous for the court to have sustained that objection but nevertheless in light of the mountain of evidence against the defendant any error would have been harmless. I don't think we have any more questions. Thank you. In that case your honor I'll rest on my briefs ask this court to affirm in all respects with the exception of remanding for the limited purpose of correcting the special assessment in the judgment. Thank you your honors. Sure. Okay Mr. Hester, rebuttal. Thank you your honor. In terms of Mr. Rollin's California conviction only being used as 609 evidence to impeach his credibility as test with testimony as a testifying witness. During cross-examination and in the government as well as the government's argument that well that was brought to your attention only for credibility and for no other purpose. Okay that's what the government said in closing argument but look at what they said in cross-examining Mr. Rollin. This is on page 2595 and 96 of the record. The prosecutor asks okay and just so the jury knows you were tried in California were you not on filing false instruments just like the ones that are in this case in the real property records in California and you raised this as one of your defenses did you not in California. Answer I did. You did didn't you and the California and in California they found you guilty didn't they they did that has nothing to do with credibility that is saying another jury considered your defense considered the same defenses you're putting in front of this jury and rejected them that's completely and it violates even the court's preliminary instructions that juries are supposed to constitute decide cases based on the evidence presented in that courtroom not what from some other jury did. Number one did Mr. Rollin object. He did not. Okay so it's plain error. It is. And number two the judge gave a very very at least one very clear instruction about it right. To be to be fair she gave more than one your honor she did but I would point you to the Gerber case which is cited in my briefing also involved misuse of the defendant's criminal history involved a very strong curative instruction was also reversed on plain error review. So Gerber is really our best case on issue two Miranda is our best case on issue one so I'd ask the court to to look closely at those cases. And what in what in Gerber overcame the fifth circuit's presumption that juries follow the instructions that district courts give them and why is that the case here? Okay so the same thing as in Miranda that there are certain classifications of evidence that are so improper so unfairly prejudicial guilt by association evidence and then arguing that the defendant's been convicted in another case for an improper purpose that they are so damaging that even a strong jury instruction can't overcome that and there's also dicta to that effect in the Romo case which is also cited in my brief. So both Miranda and Gerber it's Gerber I think I said Gerber before it's Gerber involved curative instructions and plain error review and reversal nonetheless. Judge Hendricks you asked about putting 609 evidence in or the purpose of Roland's convictions being 609 and that he didn't make an unequivocal statement that he he had well I guess no that goes to issue one I'm sorry I'm confusing it so or no it is on issue one I'm sorry so Roland never made an unequivocal statement okay so perhaps the maybe you find the government could raise Jacob's conviction okay on direct to blunt the sword but still they only get to raise the fact of conviction and they went much further than that here specific they even said that Roland was his co-defendant in that eastern district case that he pled guilty to so that's just highly improper extraneous information beyond the fact that Mr. Jacobs was convicted okay so they said not only is it the same conduct not only is it much of the same evidence including the notary stamps which one agent said was the eureka moment in the case when he discovered those but Mr. Roland was actually at one point a co-defendant in that same case that Mr. Jacobs pled or yes pled guilty to so for all of these reasons your honors we ask that you vacate these convictions and remand to the district court thank you all right Mr. Hester thank you I have a since your brief says you're associated with Bell Yard London are you a barrister I'm not I live in London okay but you're you're admitted to practice law in Texas I understand yes your honor or at least in the fifth circuit in the fifth circuit and state of Texas and you were saying this matter so I'm not asking critical critically is the federal government paying for your transport to and from London or not that was part of my deal when I got onto the panel that anytime I got oral argument I would it would be overhead to me I would pay for that okay well and I would not bill for the travel time either well thank you very much for your service as court counsel I know you've done the best you could for your client and the court appreciates it I appreciate the comment thank you your honor all right sir